**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**JOEL HELFMAN,**

                **Plaintiff(s),**         **CASE NUMBER: 06-13528
HONORABLE VICTORIA A. ROBERTS**

**v.**

**GE GROUP LIFE ASSURANCE COMPANY,
GENWORTH LIFE AND HEALTH INSURANCE COMPANY,
SUN LIFE ASSURANCE COMPANY OF CANADA,**
                **Defendant(s).**
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS FEES AND COSTS**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Joel Helfman worked at two family-owned companies: Atlas Filmore Lumber Company and Fairway Construction Company.

In June 2002, Genworth issued a Group Long-Term Disability Insurance Policy for Fairway. The policy covered Helfman.

In June 2003, Sun Life issued a Group Long-Term Disability Insurance Policy for Filmore. This policy covered Helfman as well.

On December 26, 2003, Helfman suffered a heart attack. Three days later, he underwent quadruple bypass surgery. He filed disability insurance claims with both Genworth and Sun Life. Both Genworth and Sun Life paid Short Term Disability benefits, and later, began paying Long Term Disability benefits.

In January 2005, Sun Life learned Helfman received benefits from Genworth through the policy issued to Fairway. Sun Life contacted Genworth, and after an

1

investigation, Genworth stopped making payments to Helfman. Helfman's benefits from Sun Life ceased as well.

Helfman sued Genworth and Sun Life.

On March 14, 2008, Sun Life filed a Motion for Entry of Judgment. Sun Life sought reimbursement of $94,844.54 in overpaid benefits and dismissal of Helfman's claim. The Court held ERISA governs, and Sun Life's termination of benefits was not arbitrary and capricious.

Helfman appealed. The Sixth Circuit remanded Helfman's claim against Sun Life to the plan administrator for a full and fair review.

Before the Court is Helfman's Amended Motion for Attorney's Fees and Costs. (Doc. #68). Helfman asks the Court to award him $81,046.25 in attorney's fees from Sun Life, and $1,192.50 in statutory costs. Helfman submitted a Bill of Costs that shows the $1,192.50 covers the initial filing fee, the Sixth Circuit filing fee, the deposition transcript used in support of all parties' Motions for Entry of Judgment, and the transcript for motions ordered for appeal.

Helfman's motion is **GRANTED IN PART AND DENIED IN PART**.

## II. APPLICABLE LAW AND ANALYSIS

### A. Can Helfman Seek Attorney's Fees Now, as a Result of the Remand from the Sixth Circuit?

In deciding whether to award attorney's fees in an ERISA case, the Court considers five factors:

(1)   the degree of the opposing party's culpability or bad faith

(2)   the opposing party's ability to satisfy an award of attorney's fees

(3)     the deterrent effect of an award on other persons under similar circumstances

(4)     whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA and

(5)     the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (citations omitted). These factors are referred to as the *King* factors.

"No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006) (citing *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998)).

Before the Court can analyze the *King* factors, it must determine whether Helfman can seek attorney's fees now as a result of the remand from the Sixth Circuit.

There is a significant split of authority between - and within - federal appeals courts on whether the attorney's fee statute in ERISA cases requires a party to prevail for a fee award, and the Sixth Circuit has not ruled definitively on the issue.

Nonetheless, in *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524 (6th Cir. 2008), plaintiff challenged defendant's decision to terminate his long-term disability payments. *Gaeth*, 538 F.3d at 527. The district court found defendant's determination was arbitrary and capricious. It remanded the case to defendant for further consideration, and awarded plaintiff attorney's fees. Defendant appealed the award of attorney's fees. *Id.*

The Sixth Circuit vacated the district court's decision to award attorney's fees. *Id.* at 533-34. In holding that the district court improperly analyzed the fifth *King* factor - relative merits of the parties' positions - the Sixth Circuit said:

3

> The record . . . leaves open the possibility that [defendant] might ultimately prevail on showing that [plaintiff] is no longer totally disabled.  Thus the merits of [plaintiff's] position are at best questionable as compared to the merits of [defendant's] position, causing this factor to weigh against an award of attorney fees at this point in the proceedings.
> Had the district court addressed the relative merits of the parties' positions under the fifth factor, it might well have decided that this factor weighs against a fee award at the present time.
>
> We further note that awarding attorney fees to [plaintiff] now could result in the incongruous situation of the party that ultimately wins nevertheless being required to pay the attorney fees of the losing party.  To be sure, the express language of 29 U.S.C. § 1132 does not limit an award of attorney fees to the prevailing party.  See § 1132(g)(1) (providing that "the court in its discretion may allow a reasonable attorney's fee and costs of action to *either* party" (emphasis added)).  But the possibility that [plaintiff] could receive attorney fees from [defendant] even if he ultimately loses his case underscores the importance of carefully analyzing the relative merits of the parties' positions.
>
> Such a possibility also raises the question of whether a district court would always abuse its discretion by awarding attorney fees to a losing party, or to a claimant who has yet to obtain the sought-after award of benefits.  We need not address that issue in the present case, however, because of our conclusion that the district court abused its discretion on other grounds; namely, by failing to fully analyze the *King* factors.

*Id.* at 534.

The language in *Gaeth* may signal that the Sixth Circuit would rule that the attorney's fee statute in ERISA cases does not require a party to prevail for a fee award.

Further, numerous other attorney's fee statutes contain an express prevailing party requirement.  *See e.g.*, 42 U.S.C. §1988(b) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee"); 7 U.S.C. §499g(b) ("If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee"); 7 U.S.C. §210(f) (same).  The attorney's fee statute in ERISA cases does not have a prevailing party requirement.  *See* 29 U.S.C. §1132(g) ("In any action under this subchapter . . . by

4

a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

Based on *Gaeth* and the fact that Congress knows how to restrict fees to the prevailing party, the Court finds Helfman may seek attorney's fees now. If the Sixth Circuit wanted to declare that insureds cannot seek attorney's fees based on a remand, it could have easily done so. Instead, the Sixth Circuit held that the procedural posture of the case must be addressed as part of the fifth *King* factor.

The Court now analyzes the *King* factors.

### B. *King* Factors

#### 1. Degree of Sun Life's Culpability or Bad Faith

Helfman relies on the Sixth Circuit Opinion to support his position that Sun Life acted in bad faith when it terminated his benefits. According to Helfman, "[t]he multitude of Sun Life's failures in conducting its review demonstrate the bad faith it exercised in reviewing [his] claim."

"This court's caselaw by no means precludes a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Gaeth*, 538 F.3d at 530 (emphasis and citation omitted); *see also Kauffman v. Sedalia Med. Ctr., Inc.*, 2007 WL 490896 at *1 (S.D. Ohio Feb. 9, 2007) ("the Court considers the circumstances surrounding the denial to determine the level of Defendants' culpability.").

The Sixth Circuit held Sun Life did not engage in a principled decision process, and its decision was arbitrary and capricious for five reasons:

(1) Sun Life relied on a file review in lieu of a physical examination.

5

(2)	Sun Life's final letter does not provide an explanation for why it denied benefits; Sun Life simply summarized (a) the findings of its Rehabilitation Consultant; (b) its review of opinions by Helfman's attending physicians, other medical providers, and Sun Life's staff; and (c) its reasons for rejecting Helfman's primary treating physician's finding that stress prevents Helfman from working.

(3)	It was inappropriate for Sun Life to treat Helfman's restrictions and limitations from work due to stress as a "prophylactic" factor that is irrelevant to determining whether Helfman can perform his occupation.

(4)	Sun Life's rejection of Helfman's stress as a subjective complaint was inappropriate. According to the Sixth Circuit, "[t]he fact that stress is highly subjective does not, under the terms of the policy, render it irrelevant to a determination of disability."

(5)	It was improper for Sun Life to make a credibility determination as to the nature and extent of Helfman's stress when it only conducted a file review (not a physical examination).

While Sun Life may not have acted in subjective bad faith when it terminated Helfman's benefits, the Sixth Circuit Opinion shows Sun Life engaged in culpable conduct.

This factor weighs in favor of Helfman.

### 2.	Sun Life's Ability to Satisfy an Award of Attorney's Fees

Sun Life concedes it can satisfy an award of attorney's fees. This factor weighs in favor of Helfman.

### 3.	The Deterrent Effect of an Award on Other Persons Under Similar Circumstances

"The key question in analyzing this third factor is whether the fee award would have a deterrent effect on other plan administrators." *Gaeth*, 538 F.3d at 532. In analyzing this factor, the Court focuses on whether Sun Life's actions and the facts of the case are so unique that they may serve no deterrent value, or whether other

6

insurance companies may face similar circumstances. *See Roubal v. Prudential Ins. Co. of Am.*, 2009 WL 2487978 at *2 (W.D. Ky. Aug. 14, 2009) (citing *Gaeth*, 538 F.3d at 531-32).

This case has deterrent value. For example, other plan administrators whose policies do not preclude them from considering an insured's restrictions and limitations from work due to stress will be reminded that they must take stress into account in their evaluations, and not reject the insured's stress claim as irrelevant to the disability determination. In addition, plan administrators who merely conduct file reviews, will be reminded that they cannot make credibility determinations without the benefit of a physical examination.

The Sixth Circuit found that Sun Life's decision making was unprincipled. Accordingly, this factor weighs in favor of Helfman.

### 4. Did Helfman Seek to Confer a Common Benefit on all Participants and Beneficiaries of an ERISA plan or Resolve Significant Legal Questions Regarding ERISA?

#### a. Confer a Common Benefit

"Where a claimant seeks benefits only for himself, we generally have found the common-benefit factor to weigh against an attorney-fee award." *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 378 (6th Cir. 2009) (citing *Gaeth*, 538 F.3d at 533).

Because Helfman sought benefits for himself, he did not seek to confer a common benefit on all participants and beneficiaries. This portion of the fourth factor is in Sun Life's favor.

### b.     Resolve Significant Legal Questions

Helfman says he sought to resolve significant legal questions regarding ERISA when he argued that a participant under a group policy can qualify for exemption under the "safe harbor" regulations if he pays all his own premiums, regardless of whether the employer pays premiums for other employees under the plan.

This Court said Helfman's argument was "unavailing," the regulations spoke clearly on this point, and the principle outlined in *Yates v. Hendon*, 541 U.S. 1 (2004) applied to Helfman's case. *See Yates*, 541 U.S. at 3 (finding that not splitting a plan "avoids the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for the nonowner employees; state-law governance for the working owner.").

The Sixth Circuit said:

[t]he policy objectives underlying ERISA and the Supreme Court's dicta in *Yates* [make it] clear that the selective application of ERISA . . . Helfman seeks would frustrate the purposes underlying preemption and lead to the anomaly criticized in *Yates*.

. . .

[A]lthough Helfman is correct that the holding in *Yates* does not govern the precise issue we face, the practical effect identified and avoided by the Court in reaching that holding is the same: namely, to apply the safe harbor as requested by Helfman would lead to "the anomaly that the same plan will be controlled by discrete regimes." To that end, we find that the ERISA policy of uniform regulation dictates a finding that a single plan may not be variously governed by both ERISA and state law, depending on the particular employee in question.

*Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 390 (6th Cir. 2009).

While Helfman's argument may have been novel, *Yates* as well as ERISA's policy of uniform regulation settled the question of whether the Court can view the

ERISA plan as a "hybrid" plan.

This portion of the fourth factor weighs in favor of Sun Life.

### 5. The Relative Merits of the Parties' Positions

The Sixth Circuit's holding that Sun Life's decision was arbitrary and capricious means Helfman's position is meritorious.

The fact that the Sixth Circuit remanded the case to the plan administrator for a full and fair review means Sun Life's position is meritorious as well.

Nonetheless, this factor weighs in favor of Sun Life. *See Gaeth*, 538 F.3d at 534 ("The record . . . leaves open the possibility that [Sun Life] might ultimately prevail on showing that [Helfman] is no longer totally disabled. Thus the merits of [Helfman's] position are at best questionable as compared to the merits of [Sun Life's] position, causing this factor to weigh against an award of attorney fees at this point in the proceedings.").

## III. CONCLUSION

Helfman's motion is **GRANTED IN PART AND DENIED IN PART**. After weighing the *King* factors, the Court finds they favor Helfman; his request for attorney's fees is **GRANTED**.

However, Helfman is not entitled to all of the attorney's fees he requests. Helfman must exclude: (1) the fees associated with his claim that ERISA does not apply; (2) any duplicate entries; and (3) the fees associated with his claims against Genworth.

Helfman may re-file his affidavits and billing statements on or before **January 13,**

**2010**.  Sun Life has until **January 20, 2010** to object.  Helfman may respond on or before **January 25, 2010**.

Helfman's request for $1,192.50 in statutory costs is **DENIED**; he is not the prevailing party.  *See* Fed. R. Civ. P. 54(d)(1) ("costs – other than attorney's fees – should be allowed to the prevailing party.").

**IT IS ORDERED**.

                                                         s/Victoria A. Roberts
                                                        Victoria A. Roberts
                                                        United States District Judge

Dated:  December 23, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 23, 2009.

s/Linda Vertriest
Deputy Clerk