**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOEL HELFMAN**

               **Plaintiff,**           **CASE NUMBER: 06-13528**
                                   **HONORABLE VICTORIA A. ROBERTS**

**v.**

**GE GROUP LIFE ASSURANCE COMPANY,**
**a foreign corporation, GENWORTH LIFE AND**
**HEALTH INSURANCE COMPANY, a foreign**
**corporation, AND SUN LIFE ASSURANCE**
**COMPANY OF CANADA, a foreign corporation,**

               **Defendants.**
_____/

## <u>ORDER</u>

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Joel Helman's motion for attorney's fees and supplemental motion for attorney's fees.  These motions are **GRANTED IN PART AND DENIED IN PART**.

## II.    BACKGROUND

On December 23, 2009, this Court entered an Order Granting in Part Plaintiff's Amended Motion for Attorneys Fees and Costs, (Doc. # 85), following the Sixth Circuit's decision that Sun Life Assurance Company of Canada ("Sun Life") terminated Helfman's long-term disability benefits arbitrarily and capriciously. *See Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 396 (6th Cir. 2009).  But, the Sixth Circuit held that the record did not clearly establish that Helfman was still disabled.  The court remanded

the case here and this Court remanded it to the plan administrator for a full and fair review. *Id.*

Helfman requested $81,046, representing the total amount of fees charged by his attorneys. (Doc. # 68). In its order, the Court found that Helfman was not entitled to: (1) the fees associated with his claim that ERISA did not apply; (2) any duplicate entries; and (3) the fees associated with his claims against Genworth. (*Id.* at 9).

Helfman then filed a revised affidavit and now seeks $60,251.25 in attorney's fees. (Doc. # 87). On December 15, 2010, Sun Life issued its re-determination of Helfman's benefits claim. Helfman sought disability benefits covering a forty-eight month period, from April 1, 2005 to April 3, 2009. Sun Life determined that Helfman was entitled to an additional six months of benefits, from April 1, 2005 to September 30, 2005, or $27,559.74. Helfman filed a Supplemental Motion for Attorneys Fees, seeking an additional $18,443.75 in attorney's fees purportedly incurred during the administrative review period. (Doc. # 97). Sun Life filed briefs in opposition to the amounts in both fee requests. The Court first addresses Helfman's original motion for fees and revised affidavit and then his supplemental motion.

## II.   LEGAL STANDARD

"In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). The award should be adequately compensatory to attract competent counsel but should also avoid producing a windfall for attorneys. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

2

"The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Id.* The court may then adjust the "lodestar" based on relevant circumstances peculiar to the case. *Id.*

If the fee applicant has achieved only limited or partial success, "[a]n award based on the total number of hours reasonably expended on the litigation might [ ] result in an excessive amount." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Work on an unsuccessful claim is not work "expended in pursuit of the ultimate result achieved" where plaintiff has presented distinct claims based on different facts and legal theories. *Id.* When a fee request is based, in part, on unsuccessful and distinct claims, the district court must reduce the fee award so that it is commensurate with "the degree of success obtained." *Hensley*, 461 U.S. at 436. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. The district court has broad discretion to make these determinations. *Id.* at 437.

In addition, "[t]he party seeking attorneys fees bears the burden of documenting his entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). That party should submit evidence to support the number of hours worked and the rates claimed. *Id.* (citing *Hensley*, 461 U.S. at 433). The billing records submitted by Helfman's attorneys must "describe the work performed in sufficient detail to establish that the work is reasonably related to [Helfman's] claim that Sun Life acted arbitrarily

3

and capriciously when terminating his benefits and to his defense to Sun Life's request

for reimbursement]." *In re Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999). Where

documentation is insufficient to support the amount of fees requested, the district court

may reduce the award accordingly. *Reed,* 179 F.3d at 472.

## II.    ARGUMENTS AND ANALYSIS

### A.    Helfman's Original Motion for Attorney's fees

In its Brief in Opposition, Sun Life alleges: (1) that Helfman did not adequately

reduce his requested attorneys fees to reflect that he did not succeed on his claim that

the administration of his disability benefits is not governed by ERISA, nor on his claims

against Genworth; (2) that the revised affidavit contains duplicate entries; and (3) that

Helfman's attorneys' hourly rates are excessive. (*Id.*) Sun Life says the maximum fee

amount that Helfman should be awarded, at counsel's stated hourly rates, is

$35,548.96, and that after reduction of the hourly rates the total fee award should be

$30,853.61. (Doc. # 88, 6-7).

### 1.    Reasonableness of Counsels' Hourly Rates

Sun Life contends that the hourly rates charged by Helfman's attorneys are

excessive. (Doc. # 88, 6).  It cites the 2007 Economics of Law Practice Report issued by

the State Bar of Michigan in support of its claim that $200 per hour is an appropriate

rate for his attorneys. (*Id.* at 6-7).  Helfman responds that the rates charged are not

excessive, are in fact lower than those charged by Defendant, and that the Court should

not rely on the median rate – which is not the true average – listed in a three year old

report. (Doc. # 89, 6).

4

Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *Stenson*, 465 U.S. at 895. The "relevant community" is the legal community within the court's territorial jurisdiction. *See Adcock-Ladd*, 227 F.3d at 350. "Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986).

Prevailing attorneys must justify the reasonableness of a requested fee award. *Stenson*, 645 U.S. at 896 n. 11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Reed*, 179 F.3d at 472 (the party requesting the fee award bears the burden to produce evidence in support of the rates claimed); *Iley v. Metro. Life Ins. Co.*, No. 05-71273, 2007 WL 37740, at * 2 (E.D. Mich. Jan. 4, 2007) ("Plaintiff, as the party requesting an attorney fee[,] has the burden of establishing that the hourly rates requested are based on comparable rates in the local community.").

The lead attorneys on the case were partner J. Laevin Weiner and associate Tamara Fraser. Mr. Weiner has been a member of the State Bar of Michigan since 1968; Ms. Fraser since 1994. (Rev. Aff. of J. Laevin Weiner ¶ 4,¶ 7) Mr. Weiner requests compensation at the rates of $300/hour and, after January 2007, $350/hour. (*Id.* at ¶ 6) Ms. Fraser requests compensation at the rates of $195/hour, $200/hour, and later $225/hour. (*Id.* at ¶ 7) Five other attorneys performed work on the case, with

5

experience ranging from six to sixteen years, at requested rates of $200/hour to $275/hour. (*Id.* at ¶ 8)

Helfman's Motion and supporting affidavit do not provide evidence that his attorneys' requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Stenson*, 645 U.S. at 896 n. 11. Rather, Mr. Weiner's affidavit states, in a conclusory manner, that he believes the rates charged to be reasonable in the current marketplace given counsels' experience. (*Id.* at ¶ 6, ¶ 7).  Helfman's Motion and counsel's supporting affidavit do not provide any information that would aid the Court in determining the prevailing market rate in southeastern Michigan for counsel competent in employment law and ERISA matters with comparable skill, experience and reputation. *See Blajei v. Sedgwick Claims Mgmt. Servs.*, *Inc.*, No. 09-13232, 2010 WL 3855239, at *10-*11 (E.D. Mich. Sept. 28, 2010) (unpublished) (reducing an attorney's rate from $325/hour to $275/hour after finding that Plaintiff's Motion and supporting affidavit were "deficient" in establishing that the hourly rates requested were commensurate with rates in the local community).

In *Blajei*, this Court independently researched and reviewed several recent opinions from this district where the court awarded attorney's fees in an ERISA denial-of-benefits case. *See id.* at *11. Based on its independent assessment, the Court found that $325/hour, for a "top" ERISA attorney with over forty years of experience, was too high. *See id.* (citing *Andrews v. Prudential Ins. Co. of Am.*, No. 08-14391, 2010 WL 1257784, at *2 (E.D. Mich. Mar. 29, 2010); *Kramer v. Paul Revere Life Ins. Co.*, No. 04-74362, 2009 WL 2849067, at *7 (E.D. Mich, Sept. 1, 2009); *Iley v. Metro. Life Ins. Co.*,

6

No. 05-71273, 2007 WL 37740, at *2 (E.D. Mich. Jan. 4, 2007)). This attorney, like Mr. Weiner, had over forty years experience as a practicing attorney. *Id.* He was rated "AV Preeminent" by Martindale Hubbell, and was named a "Top Lawyer" in ERISA law by DB Business Journal. *Id.* Nevertheless, the Court found the reduction warranted based on the attorney's failure to satisfy his burden to establish comparable local rates and based on its own review of those rates. *Id.*

Accordingly, the Court lowers Mr. Weiner's rate to $275/hour when determining Plaintiff's lodestar. On the other hand, the requested rates of Ms. Fraser and the other attorneys of record, all at or under $275/hour, appear reasonable based on their years of experience at the law firm and this Court's review of relevant case law.

### 2.      Calculating Plaintiff's Lodestar

Helfman's records show that Mr. Weiner spent 58.75 hours litigating this action, after making reductions to account for Helfman's claims against Genworth and that ERISA did not govern the administration of his benefits. Applying counsels' hourly rates to their hours of work, Helfman's lodestar is $56,182.50.

### 3.      Reduction of Plaintiff's Lodestar

The calculation of Helfman's lodestar does not end the inquiry. *See Hensley*, 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'result obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* (internal citation omitted). The Court next considers the impact of Helfman's limited success on his lodestar, as well as the adequacy of his billing records.

7

### i.      Limited Success, Vague Billing and "Block Billing"

Sun Life's next contention is that Helfman failed to adequately reduce his requested attorneys fees to account for the fact that his claims against Genworth, and his contention that ERISA did not apply to the administration of his benefits, were unsuccessful. (Doc. # 88, 2)

Sun Life states that there were four issues litigated: (1) whether ERISA applied to the Sun Life policy; (2) whether ERISA applied to the Genworth policy; (3) whether Sun Life's decision to terminate payment of Helfman's disability benefits was arbitrary and capricious; and (4) whether Helfman owed reimbursement to Genworth for overpayment of benefits. (*Id.* at 1).  Helfman succeeded on only the third issue, Sun Life alleges.

Sun Life argues that the revised invoices reflect 123.5 hours of attorney time representing tasks associated with overlapping claims against Sun Life and Genworth, and to combined issues in the case, for a total of $31,611.16. (*Id.* at 5).  This amount, Sun Life argues, must be reduced by seventy-five percent because Helfman did not prevail on three of the four issues. (*Id.*).

Helfman responds that it would be improper to reduce his attorney's fees by seventy-five percent for entries that cover tasks pertaining to claims other than Sun Life's termination of Helfman's benefits.  He argues that Sun Life's mathematical approach lacks integrity for three reasons. (Doc. # 89).  Specifically, Helfman contends: (1) Sun Life brought a claim against Helfman for reimbursement of benefits, which was denied, meaning that Helfman succeeded on two of five claims, rather than one of four; (2) it is misleading to state that Helfman's claims regarding the applicability of ERISA to his Sun Life and Genworth policies are two separate claims for purposes of calculating

8

a fee award because the issue, research, and drafting were the same for both defendants; and (3) Sun Life's mathematical approach fails to take into account that Helfman's claim that Sun Life acted arbitrarily and capriciously required more factual and legal investigation than the other claims. (*Id.* at 2).

Helfman argues that a fifty percent reduction for tasks relating to both Sun Life and Genworth is not warranted because "the bulk of the substance of the case was directly related to the claim against Sun Life," and to the extent a time entry reflected work relating to both Sun Life and Genworth, the appropriate reductions were made. (*Id.* at 3) Helfman says further, "to the extent an entry equally corresponded to both Defendants, and that fee would have been incurred regardless of whether GE was in the lawsuit, that amount was not reduced...." (*Id.*).

In its December 23, 2009 Order the Court instructed Helfman to exclude the fees associated with his losing claims. (Doc. # 85, 9) This is in line with Sixth Circuit case law upholding district court decisions to deny the award of attorney's fees to parties who did not prevail on their claims. *See*, *e.g.*, *Cattin v. General Motors Corp.*, 955 F.2d 416, 427 (6th Cir. 1992) ("Plaintiffs were not the prevailing party on the ERISA claim, and, therefore, it was not an abuse of discretion to deny plaintiffs' motion for attorney's fees."); *see also Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978) ("[T]he amount of attorney's fees [plaintiffs] receive should be based on the work performed on the issues in which they were successful.").

In *Hensley*, the Supreme Court held that the degree of a plaintiff's success is a "crucial factor" in determining what amount of attorney's fees to award. 461 U.S. at 440:

In some cases a plaintiff may present in one lawsuit distinctly different

9

claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants...counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

461 U.S. at 434-35.

The Court also recognized that in some cases the plaintiff's "claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. When this occurs, counsel's time is devoted more generally to the litigation as a whole, "making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* In these instances, "[the] lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the law suit." *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Id.*

Helfman's case falls into the first category. Helfman's claim that ERISA did not apply to the administration of his benefits and his claim that Sun Life unlawfully terminated his benefits are distinct; their resolution requires the analysis of different facts and law. Moreover, the result achieved thus far, though favorable to Helfman, is not "excellent." *Id.* The claims administrator might still deny Helfman's request for benefits after a full and fair review. *Cf. Richard v. Oak Tree Grp. Inc.*, No. 1:06-362, 2009 WL 3234159 (W.D. Mich. Sept. 30, 2009) (unpublished) (attorney's fee request

10

reduced by eighty-five percent in part because plaintiffs only prevailed on a minor claim, and were awarded minimal statutory damages of $50.00, such that the award of $20,550.00 in attorney's fees "would be a windfall to plaintiff's attorney.").  As the Supreme Court opined in *Hensley*, a fee award must be proportional to "the extent of a plaintiff's success." 461 U.S. at 440.

The Court agrees with Helfman that, under the circumstances of this case, the seventy-five percent reduction advanced by Defendant would not adequately reflect the amount of time Helfman's attorneys spent litigating his claim that Sun Life acted arbitrarily and capriciously. *See*, *e.g.*, *Hensley*, 461 U.S. at 435 n. 11 ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' ...Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors."). Helfman emphasizes that this claim required extensive research and "review and digestion of the medical evidence contained within Sun Life's voluminous administrative record." (Doc. # 89, 2).  The ERISA claim and Genworth's claim for reimbursement did not require a substantial amount of administrative record review or other factual investigation. Likewise, Sun Life's seventy-five percent reduction fails to take into account that Helfman prevailed on Sun Life's counter-claim for reimbursement and that the ERISA claims against both defendants required the same legal research.

On the other hand, after reviewing the invoices submitting by Helfman to support his fee request, the Court finds that Helfman's attorneys have not satisfied their burden to produce adequate evidence that the fees requested are associated with only the claim on which Helfman prevailed. For example, one invoice states that on November

11

18, 2008, TEF spent five hours on "Continued research and appeal preparations; lengthy in office conference with JLW re issues on appeal." (Doc. # 87, Exh. 1, 11/18/08). Helfman's billing records include various additional vague entries where hours were not reduced, including, "Internet and westlaw research" for three hours; (*id.* on 11/13/08). "Review of additional case law; in office conference with JLW" for two and a half hours; (*id.* on 12/02/08) and "Telephone conference with client," (*id.*) among others. Other entries reference time spent preparing for oral argument before the Court of Appeals, reviewing briefs and recent cases, and arguing the issues before the Court of Appeals, without indicating what the preparation entailed, what issues the briefs and recent cases addressed, and what amount of time was spent arguing the winning versus losing issues. (*Id.* on 6/02/09-6/18/09).

In *Imwalle*, the Sixth Circuit discussed the requirement that attorneys seeking fee reimbursement provide district courts with adequate billing statements. 515 F.3d at 553. The *Imwalle* court said:

> The key requirement for an award of attorney fees is that "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate,* [*Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495, 502 n. 2 (6th Cir. 1984)]. Where the documentation is inadequate, the district court may reduce the award accordingly. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1933.
>
>        ***
>
> Courts in this Circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not "maintain contemporaneous records of his time or the nature of his work," *Keener v. Dep't of the Army*, 136 F.R.D. 140, 147 (M.D. Tenn. 1991), *aff'd on the decision of the district court by Keener v. Dep't of the Army*, No. 91-5442, 1992 WL 34580, 1992 U.S.App. LEXIS 2822 (6th Cir. Feb. 24 1992), and where billing records "lumped" together entries under one total so that it

> was "impossible to determine the amount of time spent on each task."
> *Cleveland Area Bd. of Realtors* [*v. City of Euclid*, 965 F.Supp. 1017, 1021
> (N.D. Ohio 1997)].

*Id.* (emphasis added).

Helfman's invoices make it impossible for the Court to ascertain whether the reductions he made are sufficient to account for the issues and claims on which he did not prevail. These vague entries – though some could pertain solely to the arbitrary and capricious claim – could apply to the ERISA issue. The billing records submitted are not adequate for the Court to determine "with a high degree of certainty" that the time claimed was actually and reasonably spent in pursuit of Helfman's claims that Sun Life acted arbitrarily and capriciously when it terminated his disability benefit payments, and that Sun Life was not entitled to reimbursement for benefits paid while Genworth was paying same. *See Keener*, 136 F.D.R. at 147 (citing *United Slate*, 732 F.2d at 502-03 n. 2).

While the Court recognizes that plaintiff's counsel is not required to provide a detailed record of how every minute of his time on the case is spent, counsel should identify the general subject matter of his time expenditures. *Hensley*, 461 U.S. at 436 n. 12. Entries such as "Internet and westlaw research" and "Telephone conference with client" do not identify the subject matter of the time expenditure. Such imprecise entries fail to identify the issue and Defendant(s) being addressed. They are problematic where Plaintiff achieved only limited success. Thus, the Court is constrained to find in Defendant's favor and reduce Helfman's lodestar amount accordingly.

The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records,

13

is "across-the-board fee reductions." *See City of Euclid*, 965 F.Supp. at 1021 n. 5, and cases cited therein; *Gratz v. Bollinger*, 353 F.Supp.2d 929, 938 (E.D. Mich. 2005) ("The Court cannot possibly determine from Plaintiffs' billing statements the amount of hours expended on this issue as opposed to the 'narrowly tailored' issue on which they prevailed. The Court therefore opts to reduce the hours expended by a percentage amount."); *Pierce*, 190 F.3d at 593-94 (imposing a ten percent fee reduction where fee petitioner's billing records included generalized entries such as "Various calls" and "Review of materials," making it impossible for the court to determine the reasonableness of the billings in terms of necessity and amount of time expended).

The Court reduces the total fee requested by twenty percent. This is appropriate in light of Helfman's burden of production and in light of the "block billing" and vague entries included in the billing records which make it impossible for the Court to determine whether adequate reductions were made. *See*, *e.g.*, *Bollinger*, 353 F.Supp.2d at 939 (reducing award of attorneys fees by ten percent to account for vague billing entries such as "research," "office conference," and "review article" and for block billing, and by fifty percent to account for plaintiffs' limited success); *City of Euclid*, 695 F.Supp. at 1021 ("The total request is reduced by 10% for this insufficient documentation."); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F.Supp. 510, 521 (S.D.N.Y. 1994) ("In light of the numerous entries which contain insufficient descriptions of the work done, a lack of contemporaneous records for a significant number of hours, duplicative billing and other errors found throughout the record, there will be a reduction of the lodestar by 30%.").

The Court takes into consideration Helfman's contention that his claim that Sun

14

Life arbitrarily terminated his benefits required extensive factual and legal investigation as opposed to his other, more straightforward claims.  The ERISA issue was important, but this claim was at least equally important; Helfman's success may result in retroactive reinstatement of his disability benefits. Thus, a larger reduction is not warranted. *Compare Bollinger*, 353 F.Supp.2d at 938 (reducing a fee request by fifty percent where plaintiffs failed to prevail on their primary argument, an issue of historical significance).

Moreover, Helfman's attorneys' billing records were kept contemporaneously and, while often overly generalized, they are not indecipherable. *Compare Richard*, 2009 WL at *3 (applying an eighty-five percent reduction where an attorney's bills were "cryptic and nearly unintelligible"); *Keener*, 13 F.R.D. at 147-50 (denying altogether an attorney's fee request where the attorney admitted to sloppy record-keeping practices, including keeping records on napkins and failing to maintain contemporaneous records of his time and the nature of his work).

Helfman's lodestar is reduced by twenty percent because the Court cannot conclude, with a high degree of certainty, that the reductions made pursuant to this Court's December 23, 2009 Order adequately account for the limited nature of Helfman's success.

### ii.    April 15, 2008 Time Entry

Sun Life next contends that the revised invoices contain two duplicate time entries on April 15, 2008, reflecting a task performed by two attorneys. (Doc. # 88, 3) Helfman responds that two lawyers may confer and both bill on a case for intra-office conferences, which keep legal fees down because they facilitate the use of junior, less-

15

expensive attorneys. (Doc. # 89)

The Court agrees with Helfman.  This is a common practice to keep costs down and the amount of time that was spent conferring, ninety minutes, is not excessive. Other courts sanction this practice. *See, e.g., McGrath v. City of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) ; *Baughman v. U.S. Liability Ins. Co.*, 723 F.Supp.2d 741, 750-51 (D.N.J. 2010); *Lenihan v. City of New York*, 640 F.Supp. 822, 826 (S.D.N.Y. 1986); *Veterans Educ. Project v. Secretary of the Air Force*, 515 F.Supp. 993, 994 (D.D.C. 1981).

### iii.    August 16, 2006 Time Entry

Sun Life contends that TEF's August 16, 2006 time entry should be stricken in its entirety because it relates solely to Helfman's claims against Genworth and/or his losing ERISA argument. (Doc. # 88, 9).  Helfman responds that research into whether pre-emption might apply to an ERISA claim is necessary for any disability benefit case. (Doc. # 89, 5).  The Court agrees with Sun Life. The issue on which it prevailed is entirely divorced from any potential ERISA pre-emption issue.  Accordingly, the Court deducts this entry of 0.75 hours, at a rate of $195/hour, or $146.25, from Helfman's lodestar.

### B.    Helfman's Supplemental Motion for Attorney's fees

In his supplement, Helfman seeks an award of $18,443.75 for over sixty more hours of work in connection with his administrative remand.  Sun Life contends that because Helfman was only awarded benefits for an additional six month period, out of a possible forty-eight, he achieved only 12.5% success.  As result, Sun Life says, he

16

should be awarded no more than 12.5% of the reasonable fees that were incurred in connection with the remand. Sun Life invites the Court, however, to reweigh the *Sec'y of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985) factors as they apply to the administrative remand process, and to conclude that they weigh in favor of Sun Life this time, such that Helfman should not be awarded any additional fees. Sun Life also argues that $1,606.25 of the fees, for time purportedly spent discussing settlement, should not be awarded because it is unsupported by counsels' invoice. Finally, Sun Life contends that counsels' hourly rates must be reduced. Sun Life says the Court should award Helfman's attorneys no more than $1,500.

In reply, Helfman says the entries on the invoice pertaining to the $1,606.25 were redacted due to their confidential nature and that support for this amount is contained in J. Laevin Weiner's affidavit. Helfman further states that the $1,606.25 pertains to the administrative review process because but for Sun Life's failure to adequately review his claim in the first place, there would have been no need for settlement discussions. Helfman also takes issue with Sun Life's contention that the *King* factors do not warrant an award of fees related to the administrative remand period. Finally, Helfman contends the Court is not bound by orders from this district where fee awards were reduced based on the degree of success obtained.

### 1.    Reconsideration of the *King* Factors

The Court declines Sun Life's invitation to reconsider the *King* factors in relation to the administrative remand. That process is a part of the overall case, and the factors that weighed in Helfman's favor when the Court first awarded fees, continue to weigh in

17

Helfman's favor in connection with the administrative remand process; he is entitled to attorney's fees for the work done on remand.  The question remains, however, is he entitled to all of the fees requested, or should they be reduced for any or all of the reasons listed in Sun Life's opposition?

### 2.     The $1,606.25 Amount

The Court agrees with Sun Life that Helfman is not entitled to $1,606.25 in fees which purportedly corresponds to time spent in confidential settlement meetings.  The Court agrees with Helfman that he should not have to reveal confidential information to be entitled to an award of fees.  However, Helfman's attorney's affidavit does not reveal how many hours were spent by each partner in settlement talks.  The Court could not discern the number of hours from the blacked out portions of the billing records; the Court's calculations do not comport with the fee requested in the affidavit.  Helfman is not entitled to $1,606.25.

### 3.     Calculating Plaintiff's Lodestar

The Court already determined the appropriate hourly rates for the attorneys who worked on the administrative remand.  Applying these rates to the number of hours spent litigating Helfman's administrative case brings Helfman's lodestar to $14,737.50.

### 4.     Reduction Based on Degree of Success

In *Blajei*, 2010 WL 3855239, at *12, this Court held that a plaintiff's attorney's fees award should be proportional to the degree of success on the merits.  That case also involved an ERISA disability claimant who was denied benefits without a full and

18

fair review, and whose case was remanded to the plan administrator to determine if she was entitled to benefits.  *Id.* at * 1.

It is appropriate for the Court to reduce the amount of fees requested by Helfman in connection with his administrative remand, so that it is proportional to his degree of success on the merits.  As Sun Life points out, Helfman sought benefits for a forty-eight month period, but obtained only six month's worth.  This constitutes "some degree of success on the merits," but only partial success, namely, 12.5%.  Accordingly, the Court reduces Helfman's lodestar by 87.5%.  He is entitled to $1,842.19 in attorney's fees in connection with the remand.

## III.    CONCLUSION

Plaintiff's request for Attorney's Fees is **GRANTED IN PART AND DENIED IN PART**.

With respect to Plaintiff's original motion, the Court reduces Helfman's lodestar of $56,182.50 by twenty percent ($56,182.50 x 20%), bringing his fee award to $44,946.00.  From this, the Court subtracts his August 16, 2006 fee request ($44,946-$146.25), for a fee award of $44,799.75.

With respect to Plaintiff's supplemental motion, the Court reduces Helfman's lodestar by 87.5% ($14,737.50 x 87.5%), bringing his fee award to $1,842.19.

Sun Life is ordered to pay **$46,641.94** ($44,799.75+$1,842.19). Payment must be made within 30 days of the date of this Order.

19

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 18, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 18, 2011.

s/Linda Vertriest
Deputy Clerk